## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA CIRINO | CIVIL NO.: |
| Plaintiff | |
| v. | RE: BREACH OF CONTRACT; DECLARATORY JUDGMENT |
| KENNETH J. HORGAN and KEVIN SCOTT BENTE | |
| Defendants | |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Maria Cirino ("<u>Ms. Cirino</u>" or "<u>Plaintiff</u>"), through the undersigned counsel, and very respectfully alleges and prays as follows:

## I.     <u>INTRODUCTION</u>

Ms. Cirino loaned Kenneth J. Horgan ("<u>Mr. Horgan</u>") and his husband, Kevin Scott Bente ("<u>Mr. Bente</u>", and together with Mr. Horgan, "<u>Defendants</u>"), $125,000 in October of 2022. After the Defendants failed to submit their loan repayments to Ms. Cirino and, consequently, became delinquent, they convinced her to execute another agreement whereby she would advance the Defendants $200,000 and loan them $20,000. As part of that agreement, the Defendants agreed that Ms. Cirino would have "full decision-making authority" with respect to the timing and terms of the sale of the Pilgrim House Hotel, a property that the parties owned in common under a partnership.

In August 2024, Ms. Cirino was notified by the bank that it was planning to initiate foreclosure proceedings against the Pilgrim House Hotel. Taken by surprise, Ms. Cirino began to investigate and discovered that the Defendants not only had overdue bills, taxes, and loan

1

payments, but were also misappropriating funds from the Pilgrim House Hotel. As a result, Ms. Cirino sought to exercise her contractual right to sell the property.   The Defendants, however, have blocked and continue to block all her efforts to do so—presumably because they are currently using the Pilgrim House Hotel for their personal financial gain—and, therefore, are in breach of their contract. For these reasons, Ms. Cirino asks this Honorable Court to hold the Defendants liable for their breach of contract and emit a Declaratory Judgment enforcing her right to sell the Pilgrim House Hotel and ordering the Defendants to pay any and all outstanding debts immediately.

## II.      JURISDICTION AND VENUE

1.      This Honorable Court has jurisdiction over the present case pursuant to 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds the jurisdictional threshold of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Moreover, this Honorable Court has jurisdiction over the present case pursuant to the choice of law and choice of forum provisions in the *Agreement Among Maria Cirino, Ken Horgan, and Scott Bente*, executed by and between the parties. Venue is proper in this district for the same reasons. See Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson Inc., 201 F.3d 15, 18-19 (1st Cir. 2000); Clair Aero, Inc. v. Tradewinds Mut. Ins., LLC, 491 F.Supp.2d 211, 214 (D.P.R. 2007) ("[T]he forum clause object of this case in which 'the parties expressly submit themselves to the jurisdiction of the Courts of the Commonwealth of Puerto Rico' is an affirmative conferral of personal jurisdiction by consent").

## III.   THE PARTIES

2.      The Plaintiff, Ms. Cirino, is a citizen of Puerto Rico. Her domicile address is 200 Dorado Beach Drive #3411, Dorado, PR 00646.

3.      The Defendant Mr. Horgan is, upon information and belief, a citizen of Massachusetts. His domicile address is, upon information and belief, 6 Shore Road, Cottage # 7, North Truro, MA  02666.

4.      The Defendant Mr. Bente is, upon information and belief, a citizen of Massachusetts. His domicile address is, upon information and belief, 6 Shore Road, Cottage # 7, North Truro, MA  02666.

## IV.    FACTS

### A.  *The Joint Purchase of the Pilgrim House Hotel*

5.      Pilgrim House, LLC and 336R Commercial Street, LLC, executed a *Purchase and Sale Agreement* on February 17, 2017 and an *Asset Purchase and Sale Agreement* on February 18, 2017 with Pilgrim Heights, LLC, The Chad, LLC, and The Villa, LLC for the purchase of the real property and business known as the Sage Inn and Lounge located at Unit 1, The Pilgrim House Condominium, 336 Commercial Street, Provincetown, MA 02657 ("Pilgrim House Hotel") for $2,650,000. Ms. Cirino and Elizabeth M. Barbeau ("Ms. Barbeau") provided 100% of the capital, and co-signed loan documents, used for the purchase of the property and allowed the Defendants to become equal partners.

6.      On February 18, 2017, Ms. Cirino, Mr. Horgan, Mr. Bente, and Ms. Barbeau entered into a *Partnership Agreement*, whereby they established a partnership called the Pilgrim House Hotel dedicated to the business of providing lodging and hospitality. In accordance with the *Partnership Agreement* and after the mortgages were secured, each party owned 25% of the property and of the partnership. As for profits, Mr. Horgan and Mr. Bente were to each receive a 25% share of the net profits of the partnership, while Ms. Cirino and Ms. Barbeau were to each collect the greater of 25% or $50,000 annually.

7.    On April 18, 2017, Ms. Cirino, Mr. Horgan, Mr. Bente, and Ms. Barbeau signed an *Operating Agreement* to define the structure, management, and internal operations of Pilgrim House, LLC.

8.    Mr. Horgan and Mr. Bente oversaw the daily operations and management of Pilgrim House, LLC, whereas Ms. Cirino and Ms. Barbeau were akin to silent partners.

**B.    *The Agreement Among Maria Cirino, Ken Horgan, and Scott Bente***

9.    On May 21, 2021, at Mr. Horgan's request, a limited liability company owned by Ms. Cirino and a third party known as 336 Commercial Street, LLC leased Units 8, 9, and 10 of its property to Pilgrim House, LLC subject to a Lease Agreement. 336 Commercial Street, LLC is a completely separate entity from Pilgrim House, LLC and 336R Commercial Street, LLC and Defendants have no ownership interests in the former entity. In order to retrofit the Units to be hotel rooms, Pilgrim House, LLC also executed a *Promissory Note* with 336 Commercial Street, LLC, whereby the former would repay the latter a loan of $250,000, with interest, in a five-year amortization schedule of $4,737.48 per month, commencing on June 21, 2021. That same day, the Defendants executed a *Pledge Agreement* securing the *Promissory Note* and setting forth the terms and conditions in the case of default. In representation of Pilgrim House, LLC, the *Lease Agreement* and the *Promissory Note* were signed by Mr. Horgan; and, the *Pledge Agreement* was signed by Mr. Horgan and Mr. Bente, individually.

10.    In October 2022, Ms. Cirino loaned Mr. Horgan and Mr. Bente a total of $125,000 ("October Loan") under a promissory note in relation to their activities in Palm Springs, California at the Hotel Zoso.

4

11.     The Defendants became delinquent with respect to the loan repayments due to Ms. Cirino under the October Loan as well as to her company, 336 Commercial Street, LLC, of which the Defendants have no interest.

12.     As a result of the Defendants' need for additional funding for a California lawsuit involving the Defendants' failed hospitality venture at Hotel Zoso, Mr. Horgan and Mr. Bente turned to Ms. Cirino and convinced her to execute the *Agreement Among Maria Cirino, Ken Horgan, and Scott Bente* ("*Advance Agreement*") on February 27, 2023, pursuant to which the Defendants agreed to certain terms and conditions in exchange for Ms. Cirino's advance of $200,000 ("Advance") and loan of $20,000 ("Loan").[1] See **Exhibit 1** (*Advance Agreement*), incorporated herein by reference. Under the *Advance Agreement*, the Advance would not need to be repaid to Ms. Cirino and the October Loan would be forgiven if the following conditions were met:

a.   75% of the amount received in relation to the Employee Retention Credit (the "ERC Amount") is wired to [Ms.] Cirino within 24 hours of receipt. It is anticipated that the ERC is $324,341.05. If the ERC Amount does not get paid to [Ms.] Cirino by August 31, 2023, then [Ms.] Cirino shall have the option to convert the Advance to a loan subject to the same terms as the Loan set forth herein.

b.   Borrowers [Defendants] agree to reduce their ownership interest in Amanda Lane [(a property owned by 336 R Commercial Street, LLC – the same company that owns Pilgrim House Hotel)] by 25% by transferring an ownership interest of 25% to [Ms.] Cirino (or as directed by [Ms.] Cirino). Borrowers [Defendants] agree that a subsequent document will be prepared effectuating this ownership change and they agree to execute such document. In addition, if the ERC Amount is not received by August 31, 2023, then the Borrowers [Defendants] agree to further reduce their ownership in Amanda Lane to 10% by transferring an additional ownership interest of 15% to [Ms.] Cirino (or as directed by [Ms.] Cirino).

c.   Borrowers [Defendants] agree that with respect to Amanda Lane, the sales proceeds shall be reduced by development and rehab costs associated with the property, including but not limited to, any costs for design and architecture, legal, building, and

---

[1] Originally, the *Advance Agreement* provided for a Loan of $35,000. However, the parties executed the *Amendment Number One to Agreement Among Maria Cirino, Ken Horan, and Scott Bente* on March 16, 2023, wherein they modified the Loan amount to be for the sum of $20,000, and no longer $35,000.

landscaping. Further, the net sales proceeds shall be paid out proportionally to the ownership of the Amanda Lane property at the time of such sale.

13.    Furthermore, the Defendants agreed that the Plaintiff would have "**full decision-making authority on the valuation, timing, and strategy with respect to the sale of the Pilgrim House Hotel** notwithstanding any other agreement to the contrary."

14.    The Defendants also agreed that they would **pay the past due amounts** in connection to the Pilgrim House Hotel and, from the date of the *Advance Agreement*, **pay hotel payments and rents on time**. If, however, the Defendants failed to pay the overdue amounts in full by October 31, 2023, the *Advance Agreement* provided for the accrual of a twenty-five percent (25%) penalty that would compound every six (6) months until the amount was settled.

15.    Finally, the parties agreed that the payment of the Loan would be due on December 31, 2023, and bear an interest at ten percent (10%) per annum. If the Loan was not paid in full by December 31, 2024, including any penalty rate of fifteen percent (15%), then the Defendants agreed to transfer five percent (5%) of their interest in the Pilgrim House Hotel to Ms. Cirino.

### C.  *Initial Breach of the Advance Agreement*

16.    In July 2023, the Pilgrim House Hotel received the ERC payment for $335,722.63. The Defendants deposited a check for this amount.

17.    Despite the fact that the *Advance Agreement* executed between the Plaintiff and the Defendants stipulated that Ms. Cirino was to receive 75% of the ERC amount, only $228,219.71 was paid to her. This sum is only 67.9% of the ERC amount. For those reasons, Ms. Cirino sought to convert the Advance to a Loan, as was set forth in the *Advance Agreement*.

18.    The failure to pay Ms. Cirino 75% of the ERC amount was the first default in what would become a series of defaults under the *Advance Agreement*.

19.     Per Section 5 of the *Advance Agreement*, the Defendants had agreed to pay all past due hotel payments by October 31, 2023. The Defendants paid the first two payments and part of the third, for a total of $262,500, but no further payments have been made. As such, they are in arrears in the amount of $337,500. The amount was due on October 31, 2023, and, since it remains unpaid, has been accruing at a 25% interest rate every six (6) months.

20.     The Defendants had also agreed, under Section 5 of the *Advance Agreement*, that "from this date forward existing hotel payments and rents will be paid timely." Nonetheless, they have not kept rent current with respect to the hotel rooms that are being rented from 336 Commercial Street, LLC. The Defendants owe $42,500 to 336 Commercial Street, LLC for the rent of 2022.

21.     Pursuant to Section 6 of the *Advance Agreement*, the Defendants were also required to pay Ms. Cirino the Loan, plus interest, no later than December 31, 2024. The Defendants have failed to do so.

22.     Because the Defendants have purposefully abstained from meeting their obligations under the *Advance Agreement*, the October Loan extended by Ms. Cirino has not been forgiven. Accordingly, the October Loan is still due and owing, and payment by the Defendants has not been made in accordance with its terms.

### D.  *Sale of the Pilgrim House Hotel*

23.     Discussions of selling the Pilgrim House Hotel had been ongoing amongst the partners. The property had been on and off the market for over three (3) years.

24.     Mr. Horgan initially agreed to sell the property. He even hired a realtor to assist in the sale.

25.    The bills of the Pilgrim House Hotel were not being paid, as cash flow to cover the property's immediate financial obligations was unavailable. Amidst rising variable loan interest rates, the bank threatened foreclosure proceedings, which came to Ms. Cirino's attention in August 2024. Ms. Cirino communicated with bank officials who informed her that they had recently met with the Defendants and, after analyzing the relevant financial information, informed them that, in their view, the Pilgrim House Hotel was going to continue to struggle to meet its ongoing obligations and encouraged Defendants to sell the hotel.[2]

26.    To complicate matters further, the Defendants did not file the Pilgrim House Hotel's tax returns for two years. This has not only jeopardized the real estate's good standing integrity, but constitutes an egregious breach of the Defendants' fiduciary responsibilities.

27.    Similarly, the Defendants have not filed their personal tax returns since 2021, which harms the Pilgrim House Hotel's ability to obtain a lower interest rate on the mortgage, as that is part of the documentation requested by the bank for considering a lower interest rate. The bank has been waiting since August to receive the missing tax returns from the Defendants.

28.    The Defendants also failed to pay state and local taxes, which put the Pilgrim House Hotel's liquor license in jeopardy and resulted in fines and penalties. Moreover, yesterday Ms. Cirino and Ms. Barbeau received a notice from the Commonwealth of Massachusetts stating that their personal tax refund, a total of $35,786.06, was fully seized, transferred and applied to the debt that Mr. Horgan has incurred on behalf of Pilgrim House Hotel. See **Exhibit 2** (Notice of Refund Applied to Debt or Transferred), incorporated herein by reference. This debt includes unpaid room occupancy taxes, fees, and fines.

---

[2] The bank officials informed that they are willing to testify about their meeting with the Defendants.

29.     The Pilgrim House Hotel has incurred high-interest rate credit card debt, along with numerous fines, fees, and penalties, due to the Defendants' failure to manage and pay the business' tax and debt obligations on a timely basis.

30.     These financial issues were a direct consequence of the Defendants' actions and omissions.

31.     In September 2024, Ms. Cirino and Mr. Horgan agreed that the Pilgrim House Hotel would not make payments over $500 or make new hires without prior discussion and mutual agreement by the parties, which required Ms. Cirino's written consent.

32.     Covertly, upon information and belief, the Defendants were using the Pilgrim House Hotel's funds to pay Pilgrim House Hotel employees to carry out work relating to the Defendant's separate Hotel Zoso venture. Upon information and belief, the Defendants were also using the Pilgrim House Hotel's funds to pay for services that were being provided by the Hotel Zoso in California. The Defendants' activities included writing checks to vendors servicing Hotel Zoso as well as funding travel expenses for themselves and Hotel Zoso employees to travel to and from California. Ms. Cirino has uncovered such payments in the amount of at least $5,000.  As a result of her discovery, the Defendants blocked Ms. Cirino's access to the Pilgrim House Hotel's bank accounts in a blatant attempt to hinder her ability to further investigate and find additional instances of misappropriation of funds. Since September, Ms. Cirino has continued to question the Defendants and request detailed information. Though Mr. Horgan promised he would provide access to the relevant information, he instead ceased communication with Ms. Cirino, which forced her to hire attorneys to protect her rights and avoid further damages.

33.     Furthermore, upon Ms. Cirino's recent review of the Profit and Loss Statements for September 2024, she noticed various highly questionable transactions, including: (1) over $40,000

in travel expenses; (2) $50,000 in office expenses; (3) $25,000 in legal fees; (4) $6,000 in meals; (5) $219,000 in rent; and (6) $13,000 in contractors.

34.     Similarly, the Profit and Loss Statement for 2022 included: (1) $241,000 in rent; (2) $81,000 in office expenses; (3) $6,000 for contractors; (4) $5,000 for meals/entertainment; (5) $21,000 for travel expenses; and (6) $11,000 in legal fees. Prior to the start of the Defendants' failed venture in California, there were none or negligible travel expenses.  Additionally, the office and legal expenses are highly inconsistent with the office and legal expenses on the previous Profit and Loss Statements for 2017, 2018, 2019, 2020 and 2021.

35.     Mr. Horgan has even admitted to Ms. Cirino and to the Pilgrim House Hotel's bookkeepers that he used the company's funds to make payments on his personal credit card. While Mr. Horgan was using the Pilgrim House Hotel funds to pay for his personal credit card, his failure to pay Pilgrim House Hotel bills, taxes, credit cards, among others, has cost the hotel dearly in higher interest rates, fines, fees and potential foreclosure of the hotel property itself or its largest asset, the Amanda Lane worker housing cottages in Truro, the neighboring town.

36.     Though Mr. Horgan has said he would provide bank statements or other evidence accounting for the charges, Ms. Cirino has yet to see any bona fide receipts or documentation for these questionable expenses.

37.     Moreover, the Defendants had agreed in the *Partnership Agreement* to pay Ms. Cirino and Ms. Barbeau $100,000 ($50,000 of the net revenue each) annually from the Pilgrim House Hotel's revenue. Since this partnership has been in existence for seven (7) years, Ms. Cirino and Ms. Barbeau are supposed to have received $700,000 in agreed upon payments, but have only received $262,500 to date. The Defendants thus owe Ms. Cirino and Ms. Barbeau $437,500 in

back fees despite repeated requests from Ms. Cirino and Ms. Barbeau to collect the money contractually owed to them.

38.     On December 16, 2024, Ms. Barbeau received a notice from the Commonwealth of Massachusetts that her driver's license would be suspended if she did not pay a total of $24,222.84 in Pilgrim House tax liabilities incurred by the multiyear nonpayment of room occupancy taxes by Mr. Horgan, Manager of the Pilgrim House Hotel, by January 15, 2025. See **Exhibit 3** (Notice of Intent to Suspend Driver's License), incorporated herein by reference.

39.     Notwithstanding the Defendants' unscrupulous management practices and the corporation's consequent disarray, they have further perpetuated trouble by inhibiting Ms. Cirino's sale of the property by blocking her access to critical systems, key information, bank accounts and other relevant data that needs to be provided to the potential buyer.

40.     In December 2024, an *Offer to Purchase Agreement* was executed between Ms. Cirino and a third-party buyer for the sale and purchase of the Pilgrim House Hotel for $4.5 million. The Defendants have intentionally been an obstacle to the consummation of this sale.

41.     Ms. Cirino has received a valid and bona fide offer to purchase the Pilgrim House Hotel, including both the property and the assets of the operations. This offer is higher than any other prior offer and, on a per square foot basis, is higher than two recent comparable sales of similar hotel properties in Provincetown. This offer is a legitimate one, backed up by a deposit from the buyers. It is a top-notch, but rare, opportunity, given the financial woes plaguing the Pilgrim House Hotel. Mr. Horgan, however, unfoundedly believes the offer to be unsatisfactory when the reality is that the proceeds from the offer will barely pay the creditors. Defendants continue to refuse to acknowledge or abide by the *Advance Agreement* they signed with Ms. Cirino on February 27, 2023, which gave her 100% decision making authority over when and at what

price to sell the Pilgrim House Hotel. As a result, Ms. Cirino and Ms. Barbeau are suffering mounting financial damages daily at the hands of Defendants, in addition to the severe reputational and practical impact and damages being suffered by Ms. Cirino and Ms. Barbeau of having a revoked driver's license. Once this Honorable Court enters Declaratory Judgment confirming the enforceability of the *Advance Agreement*, Ms. Cirino can legally enforce her right to sell the property, pay off the taxes and creditors, begin to put her life back together and put this nightmare behind her.

42.    In order to provide due diligence to the buyers and their counsel, Ms. Cirino requested that the Defendants allow complete access to all the books, records, and accounts related to the Pilgrim House Hotel. The Defendants have refused to cooperate.

43.    Ms. Cirino's legal counsel reached out to Mr. Horgan and Mr. Bente via letter dated January 4, 2025, regarding Ms. Cirino's desire to exercise of her right to have unilateral control over the sale of the Pilgrim House Hotel, as was expressly stipulated and consented to in the *Advance Agreement*. In the letter, the Defendants were categorically asked to cooperate with the sale of the Pilgrim House Hotel and provide access to the company's financial information and systems. The Defendants have not done so and continue to ignore repeated requests from Ms. Cirino and her attorneys, which is why Ms. Cirino is seeking assistance from this Honorable Court in order to be able to enforce the *Advance Agreement* and successfully complete the sale of the Pilgrim House Hotel and repay its debts and creditors.

44.    On January 23, 2025, Ms. Cirino and Ms. Barbeau sent a joint demand letter to the Defendants. The Defendants ignored the letter and refused to respond.

45.    In spite of all this, Mr. Horgan has been attempting to enlist, and is in fact currently attempting to contract with, entertainers to perform at the Pilgrim House Hotel this upcoming

summer, even though the parties had mutually agreed on a prohibition against operating the property as an entertainment venue in view of the likely new ownership model. Mr. Horgan's disregard for his prior agreements and contractual obligations, not to mention his delusional and hubristic belief that he has sole power to make decisions, is not only imperiling the sale of the business and property, but is also deceiving innocent third party entertainers by promising high profits knowing that, in reality, they will not be able to perform given the impending sale of the Pilgrim House Hotel. This constitutes a financial loss, as well as a moral and reputational one, for the Pilgrim House Hotel partners.

46.    Because the Plaintiff and the Defendants had entered into a verbal contract in September of 2024 agreeing not to incur costs over $500 or make new hires without prior discussion and unanimous consent from all owners, Ms. Cirino's legal counsel sent the Defendants a Cease-and-Desist letter on January 31, 2025, asking them to halt any further hiring activities on behalf of the Pilgrim House Hotel. After all, Ms. Cirino has not consented to these expenses well worth more than $500 and involving the hiring of third parties.

47.    Instead of acknowledging and abiding by any of any of their contractual obligations, the Defendants improperly demanded $1,000,000 from Ms. Cirino and Ms. Barbeau in guaranteed payments from the sale of the Pilgrim House Hotel. The Defendants have conditioned any cooperation upon receipt of this payment.

48.    Recently, the Defendants have increased that amount to $1,500,000. Mrs. Cirino has informed the Defendants that they will obtain whatever they are entitled to upon the sale, only after the payment of all legitimate debts and expenses including all payments due to Ms. Cirino and Ms. Barbeau under the various agreements, including all tax related fines and fees levied on Ms. Cirino and Ms. Barbeau by tax authorities as well as their personal funds that have been seized

by the government due to Defendants' failure to properly use the Pilgrim House Hotel's funds to pay its taxes and bills while instead using the hotel's funds to pay their own personal bills and to further the Defendants' personal business interests outside of the Pilgrim House Hotel.

49.    On February 5, 2025, in yet another good faith attempt to resolve this situation without Court intervention, Ms. Cirino sent Defendants another demand letter requesting payment, by February 13, 2025, of all of the outstanding sums, that they comply with the *Advance Agreement* and thus execute the required documents for Ms. Cirino to exercise her rights under the *Advance Agreement*, including her authority to execute any transaction that she deems appropriate with respect to the sale of the Pilgrim House Hotel. See **Exhibit 4** (Letter dated February 5, 2025), incorporated herein by reference.

50.    As of today, the Defendants have completely ignored Ms. Cirino's and her lawyers' requests, leaving Cirino no other option than to seek the Court's assistance in enforcing the *Advance Agreement* granting her unilateral control over the sale process of the Pilgrim House Hotel and full authority required to effectuate the closing of the transaction and the repayment of creditors. Ms. Cirino is simply asking for a Declaratory Judgment as an enforcement mechanism of the *Advance Agreement*.

51.    As recent as February 5, 2025, Mr. Horgan sent Ms. Cirino an e-mail, wherein he reiterated that he will dictate how the Pilgrim House Hotel operates and explicitly negated any right the Plaintiff may have over the decisions of the property. Specifically, Mr. Horgan said, "I am the operating manager of the Pilgrim House [Hotel], my job is to sign contracts and program entertainment. [Ms. Cirino] can voice her opinion and we can discuss her ideas for improvement but she does not dictate how we operate."

52.    Though Mr. Horgan and Mr. Bente accepted Ms. Cirino's Advance and Loan, they have refused to uphold their end of the bargain. They gladly took Ms. Cirino's money yet continue to deny her right to exercise control over the sale of the property and are doing everything they can to hinder the sale from being completed.

53.    The Defendants knowingly and willfully relinquished their ability to have a say in the sale of the Pilgrim House Hotel, so their latest strategy has been to act as obstacles to Ms. Cirino's attempts to complete the sale as contracted and repay the creditors, including the Commonwealth of Massachusetts, the town of Provincetown, the town of Truro, and Ms. Cirino, among others.

## V.    CAUSES OF ACTIONS

### A. *First Cause of Action: Breach of Contract*

54.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

55.    A contract is perfected through the consent of the parties and, from that moment, constitutes a binding obligation upon them to comply with what has been expressly agreed to, as well as with the resulting consequences of the accord. Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, 128 D.P.R. 842, 852 (June 28, 1991). The validity of the parties' consent and of the contract is presumed. Id. at 853; Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009).

56.    Under Puerto Rico law, the elements for a cause of action for breach of contract are: (1) the existence of a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages. Carrero v. Molina Healthcare of Puerto Rico, Inc., No. CV 21-1605 (RAM), 2023 WL 6201408, at *1 (D.P.R. Sept. 22, 2023); Mega Media Holdings, Inc. v. Aerco Broad.

Corp., 852 F. Supp. 2d 189, 199 (D.P.R. 2012); TC Invs., Corp. v. Becker, 733 F. Supp. 2d 266, 278 (D.P.R. 2010).

57.     A contract is valid so long as there was (1) consent; (2) a definitive, legal object of the contract; and (3) consideration. Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009); Carrero v. Molina Healthcare of Puerto Rico, Inc., No. CV 21-1605 (RAM), 2023 WL 6201408, at *1 (D.P.R. Sept. 22, 2023).

58.     Because they were already in debt to the Plaintiff and in further need of money, the Defendants sought an additional loan from Ms. Cirino.

59.     The Defendants were familiar with this type of contract, as they had previously executed the October Loan for $125,000 with the Plaintiff and had represented Pilgrim House, LLC in the execution of a *Promissory Note* for a $250,000 loan and the corresponding *Pledge Agreement* with Ms. Cirino's company, 336 Commercial Street, LLC.

60.     In order to induce Ms. Cirino to advance the funds, the Defendants agreed to certain terms and conditions in exchange for a $200,000 Advance and a $20,000 Loan.

61.     The *Advance Agreement* was signed by Mr. Horgan and Mr. Bente on February 27, 2023.

62.     One of the essential elements of the *Advance Agreement* was the following stipulation: "In consideration of the Advance and the Loan, [the Defendants] agree that [Ms.] Cirino shall have full decision-making authority on the valuation, timing, and strategy with respect to the sale of the Pilgrim House Hotel notwithstanding any agreement to the contrary."

63.     Plaintiff sought to exercise her contractually agreed-upon unilateral right to sell the Pilgrim House Hotel; a right that the Defendants knowingly ceded in exchange for the Advance and the Loan.  Indeed, the entire reason that Ms. Cirino agreed to provide the Advance and the

Loan to Defendants was receiving in return the "full decision-making authority on the valuation, timing, and strategy with respect to the sale of the Pilgrim House Hotel."

64.    Despite the fact that the Plaintiff complied with her end of the bargain and provided the Defendants with the Advance and Loan, the Defendants have refused to comply with their contractual obligations and they have been intentionally and purposefully jeopardizing the sales process.

65.    Not only the Defendants' sabotage is unfounded but it is surprising as the last time that Mr. Horgan discussed with Ms. Cirino this matter, back in September 2024, he agreed to sell the Pilgrim House Hotel and even signed an agreement with a realtor to assist in the sale. Only after Ms. Cirino obtained a bona fide offer for the purchase of the hotel, Defendants objected without providing any basis for their objections. However, they gave up that right when they signed the *Advance Agreement* and collected the Advance and the Loan. The Defendants had seven (7) years to make the Pilgrim House Hotel profitable, yet they chose to do the complete opposite by carelessly managing the property. Now, they are purposefully inhibiting the transfer of the Pilgrim House Hotel to different ownership in attempts to continue pursuing their personal agenda through the use of the hotel and its funds regardless of the monetary risk and damages their actions inflict on their partners and creditors who supplied 100% of the original capital for the venture.

66.    The Puerto Rico Civil Code provides, "the person who in any way violates the tenor of his or her obligation shall be liable for compensation as to any damage." P.R. Laws Ann. Tit. 31 § 9303. Dorado Gardens LLC v. Efron, No. CV 22-1402(GMM), 2024 WL 531272, at *16 (D.P.R. Feb. 9, 2024). Article 1167 adds that these damages include not only losses, but also the profit which the creditor may have failed to realize.

67.     The Defendants have breached their contractual duties towards the Plaintiff and, as such, must indemnify the Plaintiff for the damages suffered because of this breach. This includes not only what Ms. Cirino has suffered in damages, but also any profit which she has failed to realize. For example, if Defendants had not insisted on doing expensive and resource intensive entertainment, the profits just on room rentals alone over the past seven years should have been an estimated $400,000 per year ($2.8 million total)[3] but instead, their mismanagement, misuse of funds, inability to track and adjust expenses, resulted in losses most years including an operating loss of $300,000 in 2023.

68.     Given the Defendant's breach of their obligations, the Plaintiff is fully entitled to compensatory damages in the form of monetary relief.

69.     If the sale of the Pilgrim House Hotel does not consummate, Ms. Cirino's losses will continue to grow. If any of the entities that have been adversely affected by the actions of the Defendants, including the bank that loaned money to the Pilgrim House Hotel, decide to institute an action to recover for the harm they have suffered, they will undoubtedly attempt to go after Ms. Cirino, as guarantor, since the Defendants have a record of financial constraints. That is, while Defendants have nothing to lose, Ms. Cirino will be personally responsible for Defendants' gross mishandling of the Pilgrim House Hotel. There is no reason why Ms. Cirino should be held liable for damages that are entirely attributable to the Defendants. It is exactly this possibility of unfair and unwarranted damages being entirely disproportionally allocated to Ms. Cirino at the hands of Defendants' illegal actions, self-dealings, and gross mismanagement that Ms. Cirino seeks to avoid by accepting the current offer to purchase the Pilgrim House Hotel and pay off the debts and creditors.

---

[3] Based on the room occupancy data that exists in the revenue system used by the hotel.

70.    The most recent example of this already happening is the fact that the Commonwealth of Massachusetts already seized Plaintiff's personal assets and is revoking Ms. Barbeau's driver's license due to unpaid Pilgrim House Hotel bills. <u>See</u> **Exhibits 2** and **3**. Time is of the essence as this situation becomes more perilous with every passing day Ms. Cirino cannot exercise her contractual and unfettered right to sell the Pilgrim House Hotel and distribute the proceeds to the creditors.

71.    The Plaintiff seeks specific performance of all of the agreements subscribed to by and between her and the Defendants. In particular, the Plaintiff respectfully requests this Honorable Court to award the following:

a.    Pursuant to section 4 of the *Advance Agreement*, the Plaintiff wishes to exercise her "full decision-making authority" on the sale of the Pilgrim House Hotel and requests the Honorable Court to order the Defendants to fully cooperate with the purchase and sale of the property, including providing immediate access to all the books, records, systems and accounts related to the Pilgrim House Hotel and other relevant data that needs to be provided to the potential buyer. Ms. Cirino asks this Honorable Court for the immediate declaration of her right to have full unilateral control to effectuate anything that is necessary to the sale and transfer of the Pilgrim House Hotel, including, but not limited to, single-signatory power on behalf of the Pilgrim House Hotel.

b.    Since the Defendants have failed to effectuate payment of the Loan, the Plaintiff requests that this Honorable Court enforce the 5% reduction in the Defendants' interests in the Pilgrim House Hotel and the subsequent 5% increase in her interests, as was agreed upon in section 6 of the *Advance Agreement*.

c.  Section 3(a) of the *Advance Agreement* required the Defendants to pay the Plaintiff 75% of the ERC amount. The Defendants only paid the Plaintiff 67.9% of the amount due, therefore, pursuant to the *Advance Agreement*, the Plaintiff exercised her option to convert the Advance to a loan. Accordingly, the entire **$200,000** is due and owing and this Honorable Court should order the Defendants to immediately pay said amount to Ms. Cirino.

d.  The Defendants agreed to pay all current and past due hotel payments under section 5 of the *Advance Agreement*. The total due on the hotel payments has accrued to a total of **$554,048.22** ($337,500 of arrears, $116,548.22 of accrued interest plus $100,000 due for 2024), which amount is due and owing and thus this Honorable Court must order the Defendants to pay this total immediately to Ms. Cirino.

e.  Given the breach of the *Advance Agreement*, the October Loan has not been forgiven and is thus due and owing. Plaintiff respectfully requests the Honorable Court to order Defendants to immediately repay Ms. Cirino the October Loan in full, with interest, in the amount of **$138,791.59**.

f.  This Honorable Court must order the Defendants to pay all overdue bills and taxes, the sums that were appropriated from the Pilgrim House Hotel and used for Hotel Zoso, as well as the money that remains unaccounted for in the Profit and Loss Statements.

g.  Ms. Cirino and Ms. Barbeau's tax refund was fully seized, transferred and applied to the debt incurred by Mr. Horgan. For that reason, this Honorable Court must order the Defendants to pay the Plaintiff the total of **$35,786.06** that was taken by the Commonwealth of Massachusetts as a direct result of Defendants willful acts and omissions.

**B.  *<u>Second Cause of Action: Declaratory Judgment</u>***

72.    Plaintiff realleges and incorporates by reference each and every factual allegation above as if fully set forth herein.

73.    Declaratory judgment is a method through which federal courts can declare the rights and obligations of the interested parties in a case. <u>MCLP Asset Co., Inc. v. Stewart Title Guar. Co.</u>, 731 F. Supp. 3d 318, 326 (D.P.R. 2024); <u>Xynergy Healthcare Cap. II LLC v. Municipality of San Juan</u>, 516 F. Supp. 3d 137, 144 (D.P.R. 2021).

74.    Declaratory judgment is proper where a breach of contract claim will not settle all of the contractual issues for which the plaintiff seeks relief. <u>Id.</u>

75.    Ms. Cirino's principal concern is being able to exercise her rights under the *Advance Agreement* and, consequently, sell the Pilgrim House Hotel. This relief will not be obtained through an award of damages exclusively. Rather, this Honorable Court must emit a Declaratory Judgment confirming the Plaintiff's rights and the Defendants' obligations under the *Advance Agreement* and use the sale proceeds to pay off taxes, debts and creditors.

76.    Plaintiff respectfully requests that this Honorable Court enters Declaratory Judgment affirming that Ms. Cirino has the complete and unfettered right to control the sale of the Pilgrim House Hotel to repay the creditors, including valuation, timing, and strategy of the sale. This includes, but is not limited to, declaring her right to have full unilateral control to effectuate anything that is necessary for the sale and transfer of the Pilgrim House Hotel, including, but not limited to, single-signatory power on behalf of the Pilgrim House Hotel, total dominion over the purchase price, closing costs, closing date, inspections, contingencies, financing, warranties, who purchases the property, who comes in and out of the property, and any other factor that is pertinent to the sale of the property. Crucially, this requires that this Honorable Court order the Defendants

to guarantee Plaintiff access to the premises of the Pilgrim House Hotel as well as to all of the corporation's documents and information.

77.    Time is of the essence, as the buyer who executed the *Offer to Purchase Agreement* with Ms. Cirino has expressed his willingness to withdraw his offer if the consummation of the transaction keeps being delayed by the Defendants' obstinacy. If the buyer does not purchase the Pilgrim House Hotel, the corporation will be unable to pay its creditors and, because, upon information and belief, the Defendants are close to insolvency, these creditors will choose to seek their damages from Ms. Cirino.

78.    This Honorable Court should grant a Declaratory Judgment that establishes the Plaintiff's contractual right to have complete control over the sale of the Pilgrim House Hotel, as was set forth in the *Advance Agreement*, and simultaneously order the Defendants to adhere to the consequences of the obligations that they voluntarily assumed.

79.    Since the Defendants have failed to effectuate payment of the Loan, Plaintiff respectfully requests that this Honorable Court enter Judgment declaring a 5% reduction in the Defendants' interests in the Pilgrim House Hotel and the subsequent 5% increase in Ms. Cirino's interests, as was agreed upon in section 6 of the *Advance Agreement*.

**WHEREFORE**, the Plaintiff requests this Honorable Court to grant the abovementioned remedies against the Defendants, pre- and post-judgment interest as allowed by law as well as reasonable attorneys' fees and costs incurred in bringing and prosecuting the causes of action contained in this Complaint; and such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 14th day of February, 2025.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
*Attorneys for Maria Cirino*
Popular Center, Piso 19
208 Avenida Ponce de León
San Juan, Puerto Rico 00918
Phone: (787) 274-1212
Fax: (787) 274-1470

*s/ Diego Murgia Díaz*
Diego Murgia Díaz
USDC No. 225704
dmurgia@pmalaw.com